UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VERIZON NORTH INC. et al.,

                 Plaintiffs,                    FILE NO. 5:05-CV-122

v.                                              HON. ROBERT HOLMES BELL

TELNET WORLDWIDE, INC. et al.,

                 Defendants.
_____/


## OPINION

This is a action under the Telecommunications Act of 1996, filed pursuant to 47

U.S.C. § 252(e)(6) by Plaintiff Verizon North Inc. and Contel of the South d/b/a Verizon

(collectively, "Verizon") against Defendants TelNet Worldwide, Inc. ("TelNet"), Michigan

Public Service Chairman J. Peter Lark and MPSC Commissioners Monica Martinez and

Laura Chappelle (hereafter, collectively, "MPSC").  The matter presently is before the Court

on Plaintiffs' motion for summary judgment, to which Defendants have responded with a

cross-request (without separate motion) for summary judgment in their own favor.  For the

reasons that follow, Verizon's motion for summary judgment is denied and Defendants' cross-

requests for summary judgment, which the Court construes as cross-motions, are granted.

## I.

Under the 1996 Telecommunications Act ("TCA"), Congress established rules to

permit new local competitors, called "competitive local exchange carriers" ("CLECs") to

interconnect their networks with "incumbent local exchange carriers" ("ILECs").[1]  Under the 1996 Act and FCC rules, the CLEC has the right to designate the point on the ILEC network where the CLEC will connect for transfer of its calls to the ILEC, the "point of interconnection" ("POI").

Following adoption of the 1996 Act, pursuant to 47 U.S.C. § 201, the Federal Communication Commission ("FCC") continued certain practices initially developed in the 1970s, when competitors began to offer long-distance services in competition with ATT while local service remained an exclusive franchise.  Specifically, the FCC authorized the payment by the long-distance provider of "access charges" to the local network facilities to originate and terminate calls.  Access charges were and continue to be paid, regardless of whether the customer actually pays a toll to the number called.

The 1996 Act requires that interconnecting local carriers "establish reciprocal compensation arrangements for the transport and termination of telecommunications."  47 U.S.C. § 251(b)(5).  As a result, when a call begins on one carrier's local network and ends on another, the originating network must pay reciprocal compensation to the network that terminates the call.  Reciprocal compensation rates must be the same for whichever carrier originates the calls.  47 C.F.R. § 51.711(a)(1).  State commissions are required to establish reciprocal compensation rates in accordance with FCC rules.

---

[1]Here, Verizon is an ILEC.  TelNet is a CLEC.

- 2 -

Under FCC rules, access charges do not apply when reciprocal compensation applies. Reciprocal compensation applies only to calls that begin and end in the same local exchange area. It does not apply to toll calls or long-distance calls. (Pl. Br. in Support of Summary J., Att. A.)

Under § 252 of the TCA, carriers that cannot agree on the terms of interconnection must ask the state public service commission to arbitrate disputed issues. On October 23, 2003, after Verizon and TelNet were unable to reach an agreement on all provisions of an interconnection agreement, TelNet filed a petition for arbitration, pursuant to 47 U.S.C. § 252(b), asking the MPSC to resolve the disputed issues. Following amendment of the petition and the filing of Verizon's answer, the parties agreed to retain John Kern of Kern & Associates as the arbitration panel charged with reviewing the record and developing a proposed arbitration for consideration by the MPSC. Among the issues before the arbitration panel were the two issues now on review in this Court: (1) whether TelNet could require Verizon to pay TelNet a charge for using TelNet's dedicated transmission connection to transport Verizon's calls onto the TelNet system or whether TelNet was limited to the reciprocal compensation fee for transport and termination of calls; and (2) whether VNXX calls[2] were properly considered local calls subject to reciprocal compensation.

---

[2]In a ten-digit telephone number, the first three digits identify the "area code" which is also called the "numbering plan area" or "NPA." The next three digits ("NXX") identify a specific telephone company "Exchange Area" within the area code. Together, these six numbers are called the customer's NPA/NXX code. A virtual NXX ("VNXX") number refers to the assignment of a phone number to an entity who is not physically

(continued...)

On the two issues pending in this matter, the arbitration panel concluded that Verizon was not required to deliver its traffic to TelNet's network, but instead could transfer its calls at POI on Verizon's network where TelNet delivered its own calls to Verizon. The panel also found that each party was to bear its own costs of transporting its local traffic to the POI on Verizon's network and thereafter was entitled to receive only reciprocal compensation for the transport and termination of the other party's calls. With respect to the question of VNXX calls, the arbitration panel concluded it was bound by prior MPSC cases holding that VNXX calls were "local" and therefore subject to reciprocal compensation. The panel concluded that, pursuant to the prior MPSC decisions, VNXX calls were local and eligible for the transitional compensations established for VNXX calls bound for internet service providers ("ISPs"), as set forth in the FCC's decision in *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996; Intercarrier Compensation for ISP-Bound Traffic ("ISP Remand Order")*, 16 FCC Rcd 9151, ¶¶36-37 (2001). The arbitration panel recommended, however, that the MPSC review the record developed in this case and determine whether new circumstances warrant a change in Commission policy.

---

[2](...continued)

located in the exchange which with the phone number is associated. For example, an entity that is physically located in Flint could be assigned an NPA/NXX code associated with a Muskegon exchange, enabling the entity in Flint to make and receive local (non-toll) calls to and from parties that have phone numbers with NXXs associated with the Muskegon exchange. This practice is called assigning the customer a "virtual" NXX or "VNXX" code, and a call to such a customer is typically referred to as "VNXX traffic." Such calls are also referred to as "virtual foreign exchange" or "V/FX" calls. VNXX calls typically originate and terminate in different local calling areas. TelNet provides VNXX arrangements to its customers. (Joint Stip. of Material Facts, ¶¶ 16-19; Docket #14.)

TelNet contended in the MPSC proceedings that, if Verizon elects to transfer its calls to TelNet at the same point of interconnection to which TelNet has built a dedicated transmission facility for transfer of TelNet's calls to Verizon, Verizon must pay to TelNet compensation for Verizon's share of the cost of building and maintaining the dedicated transmission facility to the point of interconnection on the Verizon network.  Prior to TelNet's building of a direct connection, both Verizon and TelNet contracted with ATT to link the two networks for the calls initiated on their respective networks.  With a direct interconnection, no intermediary is required.  However, because TelNet is required to connect to some point on the Verizon network, absent some payment, TelNet pays the full cost of travel from some point on Verizon to the TelNet network, regardless of who initiates the call.  Verizon, in contrast, will be relieved of its obligation to pay the third-party carrier while incurring no other cost.

The Commission initially adopted the arbitration panel's resolution of both issues.  However, on rehearing, the MPSC reversed itself on the issue of the dedicated interconnection service fee.   The MPSC held as follows:

> After reviewing the arguments and the record before us, the Commission finds that it should grant rehearing and reverse its October 14 order concerning this issue.  The Commission adopted the findings of the arbitration panel, which were succinctly and clearly set out. The Commission's decision arose from the mistaken belief that the language proposed by Verizon would require that Verizon pay for its share of the facilities used to transport its traffic to TelNet's network.  However, a closer look at the provisions in Section 7.1 of the Interconnection Attachment, along with the pricing provisions for reciprocal compensation in the Pricing Attachment, leads the Commission to conclude that the transport from the POI on Verizon's network

to TelNet's network is not included in the reciprocal compensation price. Federal regulations also support a change to the Commission's decision. Therefore, the Commission must modify its decision to be consistent with its own precedent and federal law.

The Commission has consistently held that the parties to an interconnection agreement must share the cost of the facilities that run between their networks on a proportional basis based on the traffic each sends over those facilities. See, e.g., the August 18, 2003 order in Case No. U-13758, in which the Commission quoted from *TSR Wireless, LLC v. US West Communications, Inc*, FCC 00-194, as follows:

> The local Competition Order requires a carrier to pay the cost of facilities used to deliver traffic originated by that carrier to the network of its co-carrier, who then terminates that traffic and bills the originating carrier for termination compensation. In essence, the originating carrier holds itself out as being capable of transmitting a telephone call to any end-user, and is responsible for paying the cost of delivering the call to the network of the co-carrier, who will then terminate the call. Under the [FCC's] regulations, the cost of the facilities used to deliver this traffic is the originating carrier's network. The originating carrier recovers the costs of these facilities through the rates it charges its own customers for making calls. This regime represents the "rules of the road" under which all carriers operate.

Id., ¶ 34.

Thus, although Verizon is correct that the Commission's order in Case No. U-12465 explicitly stated that it did not necessarily adopt all of the reasoning contained in AT&T's proposed decision of the arbitration panel, that discussion was consistent with the Commission's findings in Case No. U-13758. In that order, the Commission found that FCC precedent required the parties to pay for dedicated interconnection facilities in proportion to their actual use. The Commission adopted the CLEC's proposal to recover the cost of building a two-way trunk facility between the two networks based on the parties' relative minutes of use, which would be reassessed periodically. That conclusion is supported by FCC regulations.

47 C.F.R. 51.709(b) provides:

(a) In state proceedings, a state commission shall establish rates for the transport and termination of telecommunications traffic that are structured consistently with the manner that carriers incur those costs, and consistently with the principles of §§ 51.507 and 51.509.

(b) The rate of a carrier providing transmission facilities dedicated to the transmission of traffic between two carriers' networks shall recover only the costs of the proportion of that trunk capacity used by an interconnecting carrier to send traffic that will terminate on the providing carrier's network. Such proportions may be measured during peak periods.

The Commission finds that 47 C.F.R. 51.709(b) requires that interconnecting parties compensate each other for dedicated transmission facilities between networks, in addition to reciprocal compensation for transport and termination of the traffic once it is delivered to the other party's network. The interconnection facilities built between the two networks do not comprise a part of either network, although they may be owned by one party or the other, or both. Reciprocal compensation rates, therefore, apply to traffic once it has been delivered to the other carrier's network. The cost to deliver the traffic to the network of the other party is to be paid by the originating carrier, in addition to the transport and termination charges known as reciprocal compensation. Once the traffic is delivered to the other party's network, the only appropriate charge is the reciprocal compensation charge.

The Commission further finds that its decision is consistent with public policy insofar as it encourages CLECs like TelNet to directly interconnect with the incumbents when the traffic warrants it, rather than utilizing the less efficient method of paying for transit across a third party's network. A CLEC may safely make this determination without concern that it will thereby be required to build and provide free facilities to transport to its network traffic originating on the incumbent's network. The parties must modify their interconnection agreement to incorporate TelNet's language and delete Verizon's language on this issue.

(Feb. 24, 2005 MPSC Order on Rehearing, at 21-23; Docket #23, Ex. C.)

The MPSC also reaffirmed on rehearing that it would not reverse long-standing MPSC precedent concerning reciprocal compensation for VNXX traffic. In so doing, the MPSC responded to the same arguments raised by Verizon in the instant action:

> [Verizon] argues that the Commission failed to address new arguments and evidence that were presented in this case. It argues that the Commission's decision conflicts with federal law. It argues once again that VNXX is exchange services for access, which is excluded under the federal Telecommunications Act of 1996 (FTA), 47 USC 251 *et seq.*, from the reciprocal compensation provisions in 47 USC 25 1(b)(5). It argues that the Commission's treatment of the issue in the October 14 order was so brief as to be arbitrary and capricious, and would not likely pass judicial review.

> TelNet responds that the Commission did consider Verizon's arguments for reversing the Commission's long-standing precedent of treating VNXX traffic as local for reciprocal compensation purposes. It cites *In re Complaint of Bierman Against CenturyTel of Michigan, Inc*, 245 Mich App 351 (2001), in support of the proposition that VNXX calls are to be considered local for rating purposes, despite the fact that calls are routed outside of the local calling area.

> Further, TelNet argues, the Commision's determination is consistent with federal law. In *Starpower Communications, LLC v Verizon South Inc*, Memorandum Opinion and Order, FCC 03-278 (November 7, 2003), TelNet argues, the FCC noted that state commissions addressing this issue are split on whether VNXX calls should be treated as local calls subject to reciprocal compensation. TelNet states that the FCC declined to address the legal and policy question of whether incumbent local exchange carriers (ILECs) have an obligation to pay reciprocal compensation on VNXX traffic. TelNet argues that the Commission is not compelled to follow states reaching a different conclusion.

> In fact, TelNet argues, the Commission's decisions are consistent with the decisions of a large group of states. In its view, the Commission has adopted the more enlightened policy that furthers competition and reduces costs to customers without any additional cost to the ILEC to deliver the traffic. TelNet states that these policy considerations have already been fully litigated in Michigan, and the Commission has reached the correct conclusion.

The Commission finds that it should affirm its prior findings on this issue.  Contrary to Verizon's arguments, the Comission has consistently held that VNXX, or what is sometimes referred to as foreign exchange service, should be treated in all respects as local traffic, including reciprocal compensation. Verizon has cited no controlling authority that would cause the Commission to alter its position on this issue.   At this juncture, the Commission is not persuaded that its prior determinations are in error.  If the traffic is treated as local, it is not treated as inter-exchange.  Hence that traffic is not exempt from 47 USC 251(b)(5).

(Feb. 24, 2005 MPSC Order on Rehearing, at 10-11; Docket #23, Ex. C.)

Verizon now seeks a declaratory judgment that the MPSC, on rehearing, erred as a matter of law on both issues.  Verizon also argues that the MPSC's decision on the VNXX issue was arbitrary and capricious because it failed adequately to address Verizon's specific arguments and facts.

## II.

Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED.R.CIV.P. 56(c); *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1009 (6th Cir. 1997) (en banc).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motions. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986).  The defendant bears the initial burden of showing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Reeves v. Swift Transp. Co., Inc.*, 446 F.3d 637, 640 (6th Cir. 2006); *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).  If the defendant demonstrates there is an absence of evidence to support the plaintiff's case, the plaintiff must come forward with specific facts showing that there is a genuine issue for trial.  *See Matsushita*, 475 U.S. at 587; *Reeves*, 446 F.3d at 640; *Amini*, 440 F.3d at 357.  To sustain this burden, the plaintiff cannot rest on the mere allegations of the pleadings. *See Celotex*, 477 U.S. at 324; FED.R.CIV.P. 56(e).

The Sixth Circuit has set forth a two-tiered standard for reviewing a motion for summary judgment in an action brought under 47 U.S.C. § 252(b)(6):

> Because arriving at a decision in these disputes [] involves an understanding of the interplay between federal and state law, it is not surprising that a majority of our sister courts of appeal that have addressed similar claims have utilized a two-tiered review procedure. *See, e.g., Southwestern Bell Tel. Co. v. Pub. Util. Comm'n of Tex.,* 208 F.3d 475 (5th Cir.2000); *GTE South, Inc. v. Morrison,* 199 F.3d 733 (4th Cir.1999); *U.S. West Communications v. MFS Intelenet, Inc.,* 193 F.3d 1112 (9th Cir.1999). *But see Ill. Bell Tel. Co. v. Worldcom Techs., Inc.,* 179 F.3d 566 (7th Cir.1999).
>
> Those courts have held that the federal judiciary should first review *de novo* whether a state public service commission's orders comply with the requirements of the Telecommunications Act. If no illegality is uncovered during such a review, the question of whether the state commission correctly interpreted the challenged interconnection agreement must then be analyzed, but under the more deferential arbitrary-and-capricious standard of review usually accorded state administrative bodies' assessments of state law principles. *See Southwestern Bell Tel. Co.,* 208 F.3d at 482; *GTE South, Inc.,* 199 F.3d at 745; *U.S. West Communications,* 193 F.3d at 1117. Given the inherent logic of a federal appellate court reviewing *de novo* compliance with federal law and allowing state agencies wider deference in state law

determinations, we also adopt the bifurcated standard employed by the majority of other circuits.

*Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc.*, 339 F.3d 428, 433 (6th Cir. 2003). In sum, under *MFS TelNet*, the Court must determine whether the MPSC's orders comply with the requirements of the Telecommunications Act and FCC regulations, and, if so, whether the agency's findings of fact are arbitrary and capricious.

## III.

### A.   Dedicated Transmission Charge

In its first claim of error by the MPSC, Verizon objects to the MPSC's determination that Verizon must pay TelNet a dedicated transmission charge on calls initiated by Verizon and terminated by TelNet in addition to the reciprocal compensation charge paid to the local carrier that terminates a call initiated on another network. The objection turns on Verizon's contention that, under FCC rules, the originating carrier may be required to pay no charge other than a reciprocal compensation charge to any local carrier that terminates a call. *See* 47 C.F.R. §§ 51.701-717.

Under 47 C.F.R. § 51.701(e), "reciprocal compensation" is defined as follows:

> Reciprocal compensation.  For purposes of this subpart, a reciprocal compensation arrangement between two carriers is one in which each of the two carriers receives compensation from the other carrier for the transport and termination on each carrier's network facilities of telecommunications traffic that originates on the network facilities of the other carrier.

- 11 -

*Id.* Section 51.701(c), in turn, defines "transport":

> Transport.  For purposes of this subpart, transport is the transmission and any necessary tandem switching of telecommunications traffic subject to section 251(b)(5) of the Act from the *interconnection point* between the two carriers to the terminating carrier's end office switch that directly serves the called party, or equivalent facility provided by a carrier other than an incumbent LEC.

*Id.* (emphasis added).

Verizon contends that its definition of the "POI" and the definition of "interconnection point" referred to in 47 C.F.R. § 51.701(c), have the same meaning as "interconnection" in 47 C.F.R. § 51.5, which is defined as the "linking of two networks for the mutual exchange of traffic."  It also suggests that the "interconnection point" under 47 C.F.R. § 51.701(c) is the same as the point on Verizon's network that TelNet is permitted to designate for transmission of its own traffic to Verizon:

> (a) An incumbent LEC shall provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the incumbent LEC's network:

> (1) For the transmission and routing of telephone exchange traffic, exchange access traffic, or both;

> (2) At *any technically feasible point* within the incumbent LEC's network including, at a minimum:

> (i) The line side of a local switch;

> (ii) The trunk-side of a local switch;

> (iii) The trunk interconnection points for a tandem switch;

(iv) Central office cross-connect points;

(v) Out-of-band signaling transfer points necessary to exchange traffic at these points and access call-related databases; and

(vi) The points of access to unbundled network elements as described in § 51.319; . . . .

47 C.F.R. § 51.305(a)(1)-(2) (emphasis added).  *See also* 47 U.S.C. § 251(c)(2).  According to Verizon, if it must allow TelNet to "interconnect" with Verizon's network at any "technically feasible point" on Verizon's network, then that point is the "interconnection point" for purposes of 47 C.F.R. § 51.701(c) for transfer of both TelNet's calls to Verizon and for Verizon's calls to TelNet, from which point, Verizon contends, TelNet is entitled only to "reciprocal compensation" as defined in that section.  Because reciprocal compensation must be symmetrical under 47 C.F.R. § 51.711(a), with interconnecting carriers receiving the same compensation rate determined by the state commission on the basis of an assessment of the ILEC's costs, Verizon argues that the only basis for assessing an additional charge is by detailed proof that symmetrical reciprocal compensation is inadequate, as contemplated by 47 C.F.R. § 51.711(b).  Verizon asserts that TelNet made no effort to introduce evidence that would support such asymmetrical compensation under the regulations.

Verizon's argument that it should pay nothing other than reciprocal compensation to TelNet after TelNet's interconnection point on the Verizon network depends on an interpretation of the TelNet's POI on the Verizon network as the mandatory POI at which Verizon's outgoing traffic is delivered to the TelNet network.  According to Verizon, since

TelNet selected the POI and the POI must be used for two-way transfer, the charge ordered by the MPSC for use of TelNet's facilities after the POI, is duplicative of the reciprocal compensation payment, in violation of 47 C.F.R. § 51.711(a).

Verizon's argument is both convoluted and does not adequately address the principles encompassed by other FCC regulations.  First, as the MPSC discussed, the FCC specifically requires that the cost of a transmission link must be equitably shared by the two carriers in proportion to the amount of the transport capacity that each carrier's traffic uses:

> (b)     The rate of a carrier providing transmission facilities dedicated to the transmission of traffic between two carrier's networks shall recover only the costs of the proportion of that trunk capacity used by an interconnecting carrier to send traffic that will terminate on the providing carrier's network.  Such proportions may be measured during peak periods.

47 C.F.R. § 51.709(b) (codifying *In First Report and Order, Implementation of the Local Competition Provisions of the Telecommunications Act of 1996 ("Local Competition Order")*, 11 FCC Rcd 15499 (1996), ¶ 1062 (quoted in 2/24/05 MPSC order on rehearing)); *see also TSR Wireless, LLC v. US West Communications, Inc.*, FCC 00-194 (June 21, 2000) (requiring originating carrier to pay the cost of delivering the call to the other carrier's network).  Verizon argued at oral argument that, because the provision is located within the regulations governing reciprocal compensation, the level of reciprocal compensation presumptively includes such compensation.  However, the specificity of the regulation strongly supports the MPSC's conclusion that transmission facilities must themselves be proportionally compensated.

- 14 -

Second, the term "interconnection" as defined in 47 C.F.R. § 51.5 itself suggests that "interconnection" under the rule is not the same as the interconnection point on Verizon's network selected by TelNet.  Under 47 C.F.R. § 51.5, "interconnection" is defined as a "linking of two networks for the mutual exchange of traffic."  The term expressly "does not include the transport and termination of traffic." *Id.* The definition therefore clearly contemplates that the linking architecture itself is not part of compensation for "transport and termination of traffic."  47 CFR § 51.701(e).

Third, to accept Verizon's conflation of "interconnection" and "point of interconnection" would obviate the need to separately define "meet point" and  "meet point interconnection arrangement," as set forth in 47 C.F.R. § 51.5, for circumstances in which parties collaborate to build a dedicated interconnection:

> Meet point.  A meet point is a *point of interconnection* between two networks, designated by two telecommunications carriers, at which one carrier's responsibility for service begins and the other carrier's responsibility ends.

> Meet point interconnection arrangement.  A meet point interconnection arrangement is an arrangement by which each telecommunications carrier builds and maintains its network to a meet point.

47 C.F.R. § 51.5 (emphasis added).

Fourth, the MPSC's interpretation is also consistent with the general principle of symmetry prevailing throughout the regulations and specifically set forth in 47 C.F.R. § 51.711(a)(1):

> (1)    For purposes of this subpart, symmetrical rates are rates that a carrier other than an incumbent LEC assesses upon an incumbent LEC for transport and termination of telecommunications traffic equal to those that the incumbent LEC assesses upon the other carrier *for the same services*.

*Id.* (emphasis added).  Here, Verizon is arguing that reciprocal compensation should be the exclusive compensation to TelNet for services that are not the same as those for which Verizon receives reciprocal compensation.  Until the dedicated connection link was built, Verizon and TelNet each paid reciprocal compensation for their respective traffic from the point it reached the other's network to the termination point.  Both previously paid a third party for carrying their respective traffic from their own network to the other's network.  Now, Verizon suggests that the cost of the dedicated transmission should be built and maintained for both parties' use but that only TelNet should pay.  Reciprocal compensation to TelNet does not include the dedicated transmission link because that portion of the transmission does not cover the "same services" covered by the reciprocal compensation paid to Verizon.  It is apparent from the regulations that reciprocal compensation does not include and was not contemplated to cover the transmission links between the networks.

In sum, the structure of the regulations, taken together, suggest that the "interconnection point" for purposes of reciprocal compensation under 47 C.F.R. § 51.701(c) and (e) is not synonymous with the ILEC's obligation under 47 C.F.R. § 51.305(a) to permit "interconnection" at "any technically feasible point" or with "interconnection" as defined by 47 C.F.R. 51.305(a).  Instead, the regulations strongly suggest that the FCC contemplated

that dedicated connection links under 47 C.F.R. § 51.709(b) are themselves part of the "interconnection" defined in 47 C.F.R. § 305(a).  If that dedicated connection link is built and maintained by only one carrier rather than by way of a "meet point interconnection arrangement," it should be compensated in proportionate share by the carrier using but not providing the dedicated trunk.  As a result, the regulations, when read as a whole, strongly support the conclusion of the MPSC that "[t]he interconnection facilities built between the two networks do not comprise a part of either network, although they may be owned by one party or the other, or both.  Reciprocal compensation rates, therefore, apply to traffic once it has been delivered to the other carrier's network."

Moreover, the architecture adopted by the MPSC in its remand order is nearly identical with the architecture adopted by the FCC's Wireline Bureau in *Petition of WorldCom, Inc. Pursuant to Section 252(e)(5) of the Communications Act for Preemption of Jurisdiction of the Virginia State Corporation Commission Regarding Interconnection Disputes with Verizon Virginia Inc., and for Expedited Arbitration ("Verizon Virginia Arbitration Order")*,  DA 02-1731, 17 FCC Rcd 27039 (rel'd July 17, 2002).  The Wireline Bureau, acting for the FCC as a whole, implemented an interconnection agreement that recognized that a CLEC that builds and maintains a dedicated interconnection to an ILEC for delivery of its own traffic to the ILEC is not required to receive the ILEC's traffic at the same point without the ILEC being required to bear its own portion of the costs of such dedicated interconnection. *Id.*, ¶¶ 69-71. Accepting WorldCom's argument, the Bureau recognized that

reciprocal compensation did not compensate the CLEC for the costs of providing transport over the dedicated interconnection, but only for transport and termination on the CLEC's own network. *Id.*, ¶¶ 63, 69.  The FCC noted that the "single point of interconnection" rule was designed to benefit the CLEC, by permitting it to interconnect for delivery of its traffic to the ILEC at a single point.  However, the FCC also noted that a comparable rule did not benefit the ILEC, and the FCC recognized that "carriers do not always deliver originating traffic and receive terminating traffic at the same place."  *Id.*, ¶ 71.

Verizon argues that the *Verizon Virginia Arbitration Order* should be rejected as unpersuasive, because the order presently is being appealed and because the Wireline Bureau's decision was not that of the full Board.  Yet, as the Court has previously concluded, the Wireline Bureau's decision is consistent with both the language and structure of the regulations as a whole and with the principle of symmetry.  Moreover, Verizon fails to cite to any decision adopting its own proposed interpretation.

In sum, the Court concludes that the MPSC's decision neither violates federal law nor constitutes an arbitrary and capricious determination of the facts.  Accordingly, the MPSC's decision is affirmed.[3]

---

[3]As a final matter, the Court will address TelNet's motion to strike (Docket #32).  In its post-argument brief, Verizon argues that, "[w]hile TelNet twice appealed the Panel's ruling on the single POI to the Commission, the Commission never overturned it."  (Pl. Post-Argument Br. at 4; Docket #30.)  Instead, Verizon continues, the MPSC left in place the requirement that TelNet accept traffic from Verizon at TelNet's POI on the Verizon network, but simply permitted TelNet to levy a charge for transporting Verizon's traffic

(continued...)

### B.   <u>VNXX Calls</u>

In its second issue, Verizon objects to the MPSC's determination that VNXX calls, which appear to begin and end in the same exchange but which really begin and end in different exchange areas, should nonetheless be treated as intraexchange calls for purposes of reciprocal compensation.  Verizon argues that the MPSC's conclusion violates FCC rules applicable to interexchange traffic that predated the Telecommunications Act of 1996. TelNet and the MPSC commissioners respond that, while both the federal Telecommunications Act and the Michigan Telecommunications Act, MICH. COMP. LAWS

---

[3](...continued)
back to TelNet's switches.  Verizon therefore argues that TelNet may no longer challenge the use of a single POI for two-way traffic transfer because it did not raise the issue on cross-appeal to this Court.

In response, TelNet has moved to strike that portion of Verizon's post-argument brief, asserting that the MPSC reversed, *in toto*, its original opinion and order and required adoption of TelNet's proposed architecture on this point.  As the prevailing party, TelNet asserts it had neither basis nor right to appeal the issue.

The Court agrees with TelNet that Verizon's argument is disingenuous.  The MPSC's decision on remand, when read as a whole, clearly holds that, while TelNet must allow Verizon to transfer its traffic to TelNet at TelNet's POI on the Verizon network, Verizon must pay TelNet for use of its interconnection facility if it uses that POI. Nothing in the decision or architecture mandates that Verizon exclusively use the same POI or the dedicated link built and maintained by TelNet.  And nothing about the structure bolsters Verizon's argument about the single POI being required under the regulations.

Nevertheless, the Court rejects TelNet's motion to strike a portion of Verizon's brief as procedurally unnecessary and cumbersome.  Instead, as the Court's prior discussion makes apparent, the Court simply rejects Verizon's argument as unpersuasive.

§ 484.2352, both require interconnection arrangements, nothing in either act addresses whether VNXX is included in the FTA's provisions relating to reciprocal compensation.

According to Verizon, the FCC has affirmed that the beginning and end points of the communication determine the manner and amount of intercarrier compensation. (Pl. Mem. in Supp. of Mot. for S. Jud., at 24; docket # 20 (citing *ISP Remand Order*, 16 F.C.C. Rcd 9152-53, ¶ 3 (2001).) Verizon argues that TelNet does not dispute that most VNXX calls actually begin and end in different exchanges, since the purpose of assigning a VNXX number to a customer is to permit the customer to receive calls from different local calling areas without the caller having to incur the toll charge that would otherwise apply. On this basis, Verizon argues that the MPSC erred in considering the NXX codes to be the marker for whether a call is intraexchange or interexchange, rather than the actual beginning and end points of each call made to a VNXX number.

The FCC has twice considered whether calls made to internet service providers within the same local exchange should be subject to reciprocal compensation. In *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP-Bound Traffic, Declaratory Ruling in CC Docket No. 96-98 and Notice of Proposed Rulemaking in CC Docket No. 99-68 ("ISP Declaratory Ruling")*, 14 FCC Rcd 3689, 1999 WL 98037(1999), the FCC held that, regardless of the NXX code involved, such traffic is interstate and therefore not subject to the reciprocal compensation of § 251(b)(5). The FCC's decision rested on concerns about the significant opportunity for

arbitrage that existed when CLECs could solicit ISP providers to their local calling networks with low or free services and leverage their operating costs from the largely one-way reciprocal compensation from other carriers with the same NXX exchange. The Court of Appeals for the District of Columbia, however, reversed the FCC, holding that the Commission had failed adequately to explain why its jurisdictional conclusion was relevant to the applicability of section 251(b)(5). The court remanded the issue for further consideration. *See Bell Atl. Tel. Cos. v. FCC*, 206 F.3d 1, 5, 8 (D.C. Cir. 2000). On remand, the FCC again concluded that the compensation between LECs involved in delivering internet-bound traffic to an ISP should not be governed by the reciprocal compensation provision of § 251(b)(5). The FCC, however, adopted a transitional compensation scheme that gradually phased out reciprocal compensation payments for such calls. *See ISP Remand Order*, 16 FCC Rcd 9152-53, ¶ 1 (2001). On appeal, the District of Columbia Circuit again concluded that the basis for the FCC's ruling was not analytically supported, and it remanded the matter to the Commission for further consideration. However, the court did not vacate the Commission's order, concluding that there existed "a non-trivial likelihood" that the FCC had the authority to elect the compensation scheme it had imposed. *See Worldcom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C. Cir. 2002).

Verizon suggests that the FCC's decision in the *ISP Remand Order* requires a conclusion that calls made to any VNXX number, which ordinarily are geographically interexchange calls, are not subject to reciprocal compensation. It further argues that the

FCC's adoption of transitional compensation in the *ISP Remand Order* should not be extended to include VNXX calls, as it is inherently illogical to expand access to a temporary transitional scheme.

Since the FCC's initial *ISP Declaratory Ruling*, state commissions have split over whether VNXX calls should be treated as local calls subject to reciprocal compensation. *See In the Matter of Starpower Communications, LLC v. Verizon South Inc.*, FCC 03-278, ¶ 17 & n.56 (Nov. 7, 2003) (recognizing that state commissions had reached varying decisions) (citing cases).[4]  In *Starpower*, the FCC declined to address whether ILECs have an affirmative obligation to pay reciprocal compensation for VNXX calls.  The FCC left the decision as to whether VNXX traffic is local to the discretion of the various state public service commissions.  *Id.*

The Sixth Circuit, in *MFS Intelenet*, 339 F.3d at 435, has noted that the implications of the FCC's *ISP Declaratory Ruling* and *ISP Remand Order* are less than clear, inasmuch as the Commission's ruling was undercut by the decision in *WorldCom*, 288 F.3d at 433 "remand[ing] the FCC's interpretation on the grounds that 'nothing in § 251(g) seems to invite the Commission's reading.'  *Id.* at 433.  Consequently, '§ 251(g) does not provide a basis for the Commission's action.'" *MFS Intelenet*, 339 F.3d at 435 (quoting *WorldCom*, 288

---

[4] *See also Illinois Bell Tel. Co. v. Worldcom Techs., Inc.*, 179 F.3d 566, 573 (7th Cir. 1999) (upholding the Illinois Commerce Commission's conclusion that reciprocal compensation should apply to internet-bound traffic with a local exchange and holding that neither the 1996 Act nor FCC rulings barred the determinations of state commissions on the issue).

F.3d at 434).  The Sixth Circuit declined to give expansive reading to the *ISP Remand Order*, noting that the FCC had itself declared "the authority of state administrative bodies in this area of the law . . . ." and had "noted that it itself has yet to promulgate an official rule governing such reciprocal compensation."  *MFS Intelenet*, 339 F.3d at 435.  Indeed, as Verizon itself acknowledges, the FCC has yet to complete its pending rulemaking on the issue.  *See* Further Notice of Proposed Rulemaking, *Developing a Unified Intercarrier Compensation Regime*, 20 FCC Rcd 4685 (2005) ("*Intercarrier Compensation NPRM*").

In its reply brief and post-argument brief, Verizon relies heavily on a recent decision from the First Circuit, *Global NAPS, Inc. v. Verizon New England, Inc. ("Global NAPS I")*, 444 F.3d 59 (1st Cir. 2006), for the proposition that the actual physical locations of the parties placing and receiving a call, rather than the NXX number (as a surrogate for individual determinations), must be the basis for determining whether the call is intraexchange or interexchange for purposes of reciprocal compensation.  In *Global NAPS I*, the First Circuit considered an order of the Massachusetts Department of Telecommunications and Energy ("DTE"), which required Global NAPS I to pay Verizon access charges for all VNXX traffic, including non-local ISP-bound traffic.  Global NAPS argued that state commissions were preempted by the *ISP Remand Order* from regulating intercarrier compensation for all ISP-bound traffic.  The First Circuit held that the FCC did not expressly preempt state regulation of intercarrier compensation for non-local ISP-bound calls, leaving the DTE free to impose access charges for such calls under state law.  *Id.* at 75.

The *Global NAPS I* decision, while upholding the DTE's decision that interexchange access charges rather than intraexchange reciprocal compensation charges applied to VNXX traffic, fails to support Verizon's argument in the instant case.  In *Global NAPS I*, the First Circuit expressly noted that "Global NAPS does not challenge the DTE's determination [applying New Hampshire law] that whether a call is local or 'interexchange' should be based on the geographic endpoints of the call . . . ."  *Global NAPS I*, 444 F.3d at 72.  In the instant case, in contrast, the MPSC adhered to the longstanding practice in Michigan of determining whether a call is local or "interexchange" for purposes of reciprocal compensation by looking at the NXX code involved.   (Feb. 24, 2005 MPSC Order on Rehearing, at 10-11; Docket #33, Ex. C.)  *See, e.g., In re Complaint of Bierman Against CenturyTel of Michigan, Inc.*, 627 N.W.2d 632 (Mich. Ct. App. 2001); *In the matter of the petition of Level 3 Communications, LLC, for arbitration of interconnection rates, terms, conditions, and related arrangements with Ameritech Michigan, pursuant to Section 252(b) of the Telecommunciations Act of 1996*, Case No. U-12460 (October 24, 2000).  As a result, the decision of the First Circuit upholding the DTE's order is of no support to Verizon.

In fact, the reasoning of *Global NAPS I* decision fully supports TelNet's and the MPSC's arguments that determination of this issue remains within the discretion of state commissions.  The *Global NAPS I* court held that the precise question before the FCC in the *ISP Remand Order* was "'whether reciprocal compensation obligations apply to the delivery of calls from one LEC's end-user customer to an ISP in the same local calling area that is

served by a competing LEC.'"  *Global NAPS I*, 488 F.3d at 73-74 (quoting *ISP Remand Order*, ¶ 13).  The court carefully analyzed whether the FCC's *ISP Remand Order* should be given broad reading to preempt the DTE's authorization of access charges on VNXX made to ISP providers physically located outside the local exchange area, in addition to ISP providers located within the local exchange area.  The court rejected Global NAPS' argument that the FCC would have spoken more clearly had it "intended only to preempt state regulation of reciprocal compensation for local ISP-bound traffic . . . ."  *Global NAPS I*, 444 F.3d at 73.  Instead, the court relied on the fundamental analytical principle articulated by the Supreme Court that "in determining whether a federal agency regulation impliedly preempts state law because it poses an obstacle to federal policy, 'a court should not find pre-emption too readily in the absence of clear evidence of a conflict.'"  *Id.* at 75 (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881, 885 (2000)).  Rather than finding clear evidence of FCC to occupy the entire field of intercarrier compensation, the *Global NAPS I* court found that "the *ISP Remand Order* was focused on a particular issue of intercarrier compensation; the FCC deferred fuller consideration of a unified system of intercarrier compensation to a future rulemaking."  *Global NAPS I*, 444 F.3d at 75.  Indeed, in *Global NAPS I*, the FCC was invited to file a brief as *amicus curiae*, which the court summarized as follows:

> The FCC's helpful brief, while not taking a position on the outcome of this appeal, nonetheless supports the conclusion that the order did not clearly preempt state regulation of intrastate access charges.  The brief states that "[t]he *ISP Remand Order* does not provide a clear answer to [the] question" of whether the order "was intended to preempt states from establishing" a requirement of intercarrier compensation for interexchange VNXX ISP-bound

calls.  It notes that "[i]n some respects, the *ISP Remand Order* appears to address all calls placed to ISPs" but also that "the administrative history that led up to the *ISP Remand Order* indicates that in addressing compensation, the Commission was focused on calls between dial-up users and ISPs in a single local calling area."  Thus it concludes that the *ISP Remand Order* "can be read to support the interpretation set forth by either party in this dispute."

The FCC further notes that "in establishing the new compensation scheme for ISP-bound calls, the Commission was considering only calls placed to ISPs located in the same local calling area as the caller."  According to the FCC, "[t]he Commission itself has not addressed application of the *ISP Remand Order* to ISP-bound calls outside a local calling area" or "*decided the implications of using VNXX numbers for intercarrier compensation more generally.*"

*Global NAPS I*, 444 F.3d at 74 (emphasis added).  From the FCC's reply, in conjunction with accepted rules of interpretation of agency decisions, the *Global NAPS I* court found that state commissions retained the discretion to act on matters of intercarrier compensation, except for those local ISP-bound calls expressly discussed in the *ISP Remand Order*.[5]

The last sentence of the above-quoted excerpt from the FCC's *amicus* brief in *Global NAPS I* makes clear that neither the *ISP Remand Order* nor other FCC action bars the MPSC

---

[5]In a late-filed notice of supplemental authority (Docket #35), Verizon refers this Court to *Global NAPS, Inc. v. Verizon New England, Inc. (Global NAPS II)*, ___ F.3d ___, 2006 WL 1828612 (2d Cir. July 5, 2006).  In *Global NAPS II*, the Second Circuit, like the First Circuit, rejects Global NAPS' argument that the FCC in the *ISP Remand Order* preempted state commissions from determining local calling areas and determining whether reciprocal compensation should be paid for VNXX calls and calls to ISPs not located in the same local area.  *Global NAPS II* upheld the decision of the Vermont Public Service Board that VNXX calls were not subject to reciprocal compensation.  However, for the same reasons recited concerning the *Global NAPS I* decision, the *Global NAPS II* reasoning supports the decision of the MPSC in the instant case.  Both decisions squarely hold that such decisions are within the discretionary authority of the state regulatory commission.  *Id.* at ** 8-9.

from acting in the area of the VNXX calls in issue in the instant case. To the contrary, as the *Global NAPS I* decision makes abundantly clear, the MPSC had clear authority to reach the decision it reached.

Finally, the Court rejects Verizon's argument that the decision of the MPSC was arbitrary and capricious because the MPSC, after listing in exhaustive detail the arguments to be made on both sides of the decision, reached its conclusion to accept TelNet's position and adhere to its own past precedent without specifically refuting each of Verizon's arguments. The MPSC decision makes clear that it understood and considered all arguments made by Verizon; it simply declined to accept Verizon's request to overturn established precedent. The decision is the antithesis of arbitrary and capricious decisionmaking.

In sum, the strong weight of the law supports the authority of the MPSC's to decide whether reciprocal compensation should be paid for VNXX calls. In addition, the finding of the MPSC is both consistent with federal law and patently reasonable. The Court therefore will dismiss Verizon's second contention under federal law.

## IV.

For the foregoing reasons, the Court will deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motions for summary judgment. A judgment consistent with this opinion shall be entered.

Date:    July 20, 2006            /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE